IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   5:20-CR-84 (TJM) |
| | ) | |
| v. | ) | **Plea Agreement** |
| | ) | |
| **MICHAEL BARTUSEK,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States

Attorney for the Northern District of New York, and defendant **Michael Bartusek** (hereinafter

"the defendant"), by and through the defendant's counsel of record, hereby enter into the following

plea agreement pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure:

1) **The Defendant's Obligations:**

 a) **Guilty Pleas:**

 (1) The defendant will change the defendant's previously-entered plea of "not guilty" and

 plead guilty to Counts 1 and 8 of the indictment in Case No. 5:20-cr-84 (TJM) charging

 the defendant with wire fraud, in violation of 18 U.S.C. § 1343 and transactions in

 criminally derived property, in violation of 18 U.S.C. § 1957.

 (2) The defendant, having waived his right to an indictment and having been charged by

 information in the United States District Court for the Western District of New York

 in Case No. 21-cr-38 with filing a false tax return in violation of 26 U.S.C. § 7206(1),

 and the defendant having consented to the transfer of that case to the United States

 District Court for the Northern District of New York pursuant to Rule 20 of the Federal

 Rules of Criminal Procedure, will plead guilty to the sole count of the information.

b) **Special Assessment:** The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013. The defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $300, payable to the U.S. District Court, at the time of sentencing.

c) **Compliance with Other Terms of Agreement:** The defendant will comply in a timely manner with all of the terms of this plea agreement.

d) **Restitution:**

(1) The defendant will consent to entry of an order directing the defendant's payment of restitution in the following amounts to the following victims, whether or not the losses suffered by those victims resulted from the offenses of conviction:

(a) Company-1 (whose real identity is known to the defendant): $776,000.00

(b) C.P. (whose real identity is known to the defendant): $70,000.00

(c) B.M. (whose real identity is known to the defendant): $100,000.00

(2) The defendant will consent to entry of an order directing the defendant's payment of restitution to the Internal Revenue Service in the following amounts for the specified tax years, whether or not resulting from the offense of conviction: $22,406.00 for unpaid taxes in 2015; $5,516.00 for unpaid taxes in 2016.

e) **Forfeiture:** Pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 853(p), the defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Forfeiture Allegations in the superseding information described above, or to any substitute assets, or to a money judgment, all as more fully set out below:

(1) A money judgment of $946,000.

(2) If any of the property described above, as a result of any act or omission of the defendant, either: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) and Fed. R. Crim. P. 32.2(e).

f) **Tax Offenses/Disclosure to IRS:** The defendant agrees to provide timely, full, complete, and accurate information to the Internal Revenue Service for the calendar years 2015 through 2016 and fully cooperate in the determination and payment of any income taxes, penalties, and interest that may be due and owing to the United States for those years by the defendant. The defendant agrees that, within 90 days of the entry of the guilty plea, the defendant will file legal and accurate amended income tax returns for calendar years 2015 through 2016 for the defendant.

2)   **The Government's Obligations:**

a) **Dismissal of remaining charges:** Upon imposition of a sentence consistent with the terms of this agreement, the government will move to dismiss all charges against the defendant in Case No. 5:20-CR-84 (TJM) other than those to which the defendant pled guilty pursuant to this agreement and on which the Court imposed sentence. Such dismissal will be without prejudice, permitting the government to seek reinstatement of any and all of those charges if the guilty plea and sentence do not remain in effect.

b) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges

3

against the defendant based on conduct described in the indictment in Case No 5:20-CR-84 (TJM) or the conduct described in the information in Case No. 21-cr-38    and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement.  This agreement does not prevent the government from seeking charges based on other conduct.

c) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

3)   **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offenses to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

a) Wire Fraud – 18 U.S.C. § 1343

   (1) Maximum term of imprisonment:  20 years

   (2) Maximum fine: $250,000, pursuant to 18 U.S.C. § 3571.  The Court has discretion pursuant to 18 U.S.C. § 3571(b) & (d) to impose an alternative fine of the greater of $250,000 or twice the pecuniary gain to the defendant or loss to any victim resulting from the offense of conviction.

b) Transactions in Criminally Derived Property – 18 U.S.C. § 1957

   (1) Maximum term of imprisonment:  10 years

   (2) Maximum fine:  $250,000, pursuant to 18 U.S.C. § 3571.  The Court has discretion pursuant to 18 U.S.C. § 1957(b)(2) to impose an alternative fine of not more than twice the amount of the criminally derived property involved in the transaction.

c) Filing False Tax Returns – 26 U.S.C. § 7206(1)

   (1) Maximum term of imprisonment:  3 years

4

(2) Maximum fine: $100,000.

d) **Supervised release term:** In addition to imposing any other penalty, the sentencing court may require the defendant to serve a term of supervised release of up to 3 years, to begin after imprisonment.  *See* 18 U.S.C. § 3583.  A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 2 years.

e) **Other adverse consequences:**   Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

4)    **Elements of Offenses:** The defendant understands that the following are the elements of the offenses to which the defendant agrees to plead guilty.  The defendant admits that the defendant's conduct satisfies each and every one of these elements.

   a)  Wire Fraud

      (1) The defendant devised a scheme to defraud or obtain money or property by materially false or fraudulent pretenses, representations, or promises;

      (2) The defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

      (3) In advancing, furthering, or carrying out the scheme, the defendant caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

   b)  Transactions in Criminally Derived Property

      (1) The defendant knowingly engaged in a monetary transaction;

      (2) The monetary transaction was of a value greater than $10,000;

      (3) The monetary transaction involved criminally derived property;

5

      (4) The derived property was derived from specified unlawful activity;

      (5) The defendant knew that the monetary transaction involved criminally derived property; and

      (6) The monetary transaction took place within the United States.

c) Filing a False Tax Return

      (1) The defendant made and subscribed a return, statement, or other document which was false as to a material matter;

      (2) The return, statement, or other document contained a written declaration that it was made under the penalties of perjury;

      (3) The defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and

      (4) The defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law.

5) **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offenses to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to those offenses:

**The Scheme to Defraud Company-1**

a) Starting in or about July 2015 and continuing through in or about December 2016, the defendant, in some instances acting with others as summarized here, intentionally devised and executed a scheme to defraud to obtain money to finance a high risk investment in foreign diamonds through a company called Integra Diamonds, from which the defendant hoped to personally profit while concealing the fraud. In carrying out and executing the scheme to defraud, the defendant made materially false representations, with knowledge

6

of their falsely and with the intent to defraud, and in advancing, furthering, and carrying out the scheme, the defendant caused the transmission of wires in interstate commerce.

b) Company-1 is a Delaware corporation with its principal place of business located in New Hartford, New York, in the Northern District of New York.

c) From in or about July 2015 through in or about March 2016, the defendant was Company-1's Chief Financial Officer. The defendant's duties included leading and managing Company-1's finance and accounting teams, including preparation of financial reporting and advising Company-1 on financial planning and management.

d) In carrying out and executing the scheme to defraud as it related to Company-1, the defendant took the following actions:

(1) Starting in or about late August and September 2015, the defendant asked Company-1 employees about Company-1's cash holdings and expressed an interest in using Company-1's cash holdings to make what he falsely represented to be short-term, safe investments on Company-1's behalf.

(2) The defendant thereafter used, directed, and enabled the use of Company-1's money as follows:

(a) On or about November 2, 2015, the defendant caused a wire transfer in interstate commerce of $84,475 of Company-1's funds to the defendant's personal jointly-held Citizens Bank account ending in 4665. That same day, the defendant caused Citizens Bank to issue a bank check in the amount of $79,452.28 payable to Canandaigua National Bank to reinstate the mortgage on the defendant's personal residence.

(b) On or about November 6, 2015, the defendant caused a wire transfer in interstate commerce of $14,500 of Company-1's funds to a Wells Fargo account ending in 6079 held by a person with the initials D.B. That transfer was not related to Company-1's interests and instead was used to pay off one of the defendant's personal obligations.

(c) In or about the fall of 2015, the defendant and Person-1 directed approximately $270,000 of Company-1's funds to finance potential purchases of African diamonds.

(d) The defendant also was aware that Person-1 used some of Company-1's funds for Person-1's own expenses.

(3) The defendant sent false and misleading communications to other Company-1 employees to further and conceal his scheme to divert and misuse Company-1's assets, including:

(a) On or about September 22, 2015, the defendant sent an email message to Company-1's Chief Accounting Officer / Controller asserting that Company-1 had an opportunity to pool assets "with other investors with" a legitimate financial services firm, and the defendant told the Chief Accounting Officer/ Controller, "I would like to put $250k into account of Canada - 10 day requirement/matures - these ST instruments can yield 20-50% a turn - they are not always avail[able.]"   The defendant knew that these representations were false.

(b) On or about October 14, 2015, the defendant sent electronic messages over Company-1's internal messaging system to a Company-1 employee saying that: (a) he wanted to use Company-1's cash to "open another position"; (b) the "first

position closes on Friday so that one will come back early next week - I want to keep rolling positions every 2 weeks.   Thanks $178,000"; (c) "since the first position is clearing - I need the banking info for the distribution to come back to [Company-1].  So it will essentially be a wire back for the distribution"; and (d) "the first position is going to yield about 40+% and will be distributed back to principals by Monday - so we can just get the rhythm down every 2-3 weeks we can do great[.]" The defendant knew these representations were false.

    (c) On or about October 30, 2015, the defendant sent a communication to a Company-1 employee asserting that Company-1 would be "splitting a position with Fidelity[.]"  The defendant knew this representation was false.

(4) On or about January 26, 2016, the defendant created two false account statements purportedly from a legitimate financial services firm.  The defendant created these false account statements to deceive Company-1 regarding the status of funds that the defendant had caused to be transferred, supposedly to finance safe, short-term investments.  One of these false account statements purported to describe the status of Company-1's money at year-end 2015 (the "2015 False Account Statement"), and the other purported to describe the status of Company-1's money in the early part of 2016 (the "2016 False Account Statement").

(5) On or about January 26, 2016, the defendant drafted and sent to two Company-1 employees an email message that made it appear as if the defendant had received the 2015 False Account Statement from Person-1.  The defendant himself had actually drafted both the 2015 False Account Statement and the email message making it appear as if Person-1 had sent the 2015 False Account Statement to the defendant.

(6) On or about January 27, 2016, the defendant sent the 2016 False Account Statement to a Company-1 employee, making it appear as if the defendant had received the 2016 False Account Statement from Person-1 when the defendant had actually fabricated the 2016 False Account Statement himself.

(7) On or about January 27, 2016, the defendant sent an email message to a senior Company-1 employee stating that "[y]esterday we received 12/31 statement and our account was closed - we should get a confirmation to for distributions back into [Company-I]."   The defendant had created the purported 2015 False Account Statement, the "account" was not closed because it never existed, and any distribution back to Company-1 would have to come from closing one or more diamond transactions.

(8) On or about January 30, 2016, the defendant drafted proposed language for Person-1 to use in an email message to a senior Company-1 employee, and the defendant sent that proposed language to Person-1.   On or about the same day, Person-1 used the language proposed by the defendant in an email to a senior Company-1 employee, stating that "[b]ecause all the assets are sold our buyer can initiate a single wire back to [a] Trust account in US and then to [Company-1] which will be Monday."   The defendant knew at the time that all of Company-1's assets had not been sold because he had dissipated some of the assets to pay himself or satisfy personal obligations.

(9) On or about July 11, 2016, and July 12, 2016, the defendant received wire transfers in the amount of $12,000 representing a portion of his share of the proceeds from a sale of a parcel of diamonds purchased with Company-1's money. Company-1 did not

receive any of the proceeds from the sale of a parcel of diamonds purchased with its money.

e) For the purpose of executing the scheme to defraud, the defendant knowingly caused to be transmitted by means of wire communication in interstate and foreign commerce the following wire transfers of funds, along with other wire transfers in interstate or foreign commerce as reflected below:

| Date | Amount | Originating Bank and Location | Terminating Bank and Location |
|------|--------|-------------------------------|-------------------------------|
| 9/25/15 | $101,000 | JPMorgan Chase Bank, N.A. (England) | Compass Bank (Alabama) |
| 10/1/15 | $149,000 | JPMorgan Chase Bank, N.A. (New York) | Wells Fargo Bank, N.A. (Alabama) |
| 10/7/15 | $13,000 | JPMorgan Chase Bank, N.A. (New York) | Wells Fargo Bank, N.A. (Alabama) |
| 10/15/15 | $178,000 | JPMorgan Chase Bank, N.A. (New York) | Wells Fargo Bank, N.A. (Alabama) |
| 10/22/15 | $65,000 | JPMorgan Chase Bank, N.A. (New York) | Wells Fargo Bank, N.A. (Alabama) |
| 10/30/15 | $85,000 | JPMorgan Chase Bank, N.A. (New York) | Wells Fargo Bank, N.A. (Alabama) |
| 11/6/15 | $185,000 | JPMorgan Chase Bank, N.A. (New York) | Wells Fargo Bank, N.A. (Alabama) |
| | $776,000 | | |

f) On or about the dates set forth below, the defendant willfully caused others to engage in the monetary transactions in the United States reflected below, which were in and affecting commerce and which the defendant knew were in criminally derived property derived from wire fraud (a specified unlawful activity):

| Date | Monetary Transaction |
|------|----------------------|
| 11/2/15 | Wire transfer of $84,475 from an account held by a law firm in Alabama to the defendant's jointly held Citizens Bank account ending in 4665. |
| 11/2/15 | Transfer of $79,452.28 by check number 513346405-6 made payable to Canandaigua National Bank and funded from the defendant's jointly held Citizens Bank account ending in 4665. |

| 11/16/15 | Transfer of $14,500 from an account held by a law firm in Alabama to a Wells Fargo bank account ending in 6079 held by an individual with the initials D.B. |
| 7/8/16 | Wire transfer of $15,000 from J.W.'s Citibank Account ending in 8380 to a Wells Fargo account ending in 6079 held by an individual with the initials D.B. |

### The Scheme to Defraud – C.P. and B.M.

g) It also was part of the defendant's scheme that, beginning in or about April 2016 and continuing until in or about December 2016, the defendant, working with two other individuals, Person 2 and Person 3, solicited investments for Integra Diamonds, Person 2's company. The defendant, together with Person 2 and Person 3, obtained money from C.P. and B.M. by means of materially false and fraudulent pretenses, representations, and promises, all in an effort to recover investment funds that had been lost (from, among other sources, Company-1) during the failed 2015 diamond investment summarized above.

h) It was part of the scheme and artifice that the defendant solicited a $100,000 investment from C.P. for the purpose of purchasing diamonds in Africa. The defendant did so by, among other things, providing C.P. with an Executive Summary, drafted by Person 2, that contained materially false statements about Integra Diamonds' customers, vendors, and experience. The defendant also sought to reassure C.P. that he was not Integra Diamonds' only investor by providing C.P. with an Integra Diamonds bank statement showing a balance of $1,000,000. That sum of money did not, however, represent funds that were available to Integra Diamonds for diamond purchases. The defendant also provided C.P. with a Promissory Note and Investor Agreement, signed by Person 2, which "guarantee[d]" C.P. a return of at least $8,000 per month. In reliance on these materially false promises and representations, C.P. invested $100,000 in Integra Diamonds. However, none of C.P.'s investment was used to purchase diamonds, and C.P. received none of his promised return.

12

The defendant returned $30,000 of C.P.'s funds to C.P. and ultimately retained $29,133.65 of C.P.'s funds for himself.

i)   By way of relevant conduct, the defendant acknowledges that, after C.P.'s failed investment, Person 3, who had introduced the defendant to Person 2, solicited a $100,000 investment from B.M. for the purpose of purchasing diamonds in Africa.  Person 3 did so by means of materially false and fraudulent pretenses, representations, and promises.  In reliance on those materially false promises and representations, B.M. invested $100,000 in Integra Diamonds.  Person 2 used nearly all of those funds to finance a trip to Sierra Leone in December 2016, during which he purchased approximately $30,296.25 in diamonds. Person 2 then resold those diamonds in the United States for a substantial loss.  B.M. received none of his original principal and none of his promised return.

### Filing False Tax Returns

j)   On or about April 19, 2016, the defendant willfully made and subscribed a U.S. Individual Income Tax Return, Form 1040, for the calendar year 2015, which was verified by a written declaration that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter.

k)   Specifically, this individual income tax return falsely stated, at Line 22, that the defendant's total income reported was $80,023.00, when, in fact, as the defendant well knew, the true amount of his income was materially greater than reported—that is, $202,923—because the defendant had withheld information about $122,900 in income. The defendant received $114,500 of that additional income through criminal activity—that is, embezzling funds from Company-1 and by using, for his personal benefit, investment funds entrusted to him by an acquaintance. The defendant nonetheless willfully submitted the return knowing that

it was materially false for the purpose of violating the tax laws. As a result, the defendant avoided paying income taxes to the Internal Revenue Service in the amount of approximately $22,406.

l)  By way of relevant conduct, the defendant acknowledges and admits that he also willfully made and subscribed a U.S. Individual Income Tax Return, Form 1040, for the calendar year 2016, which was verified by a written declaration that was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter.

m) Specifically, this individual income tax return falsely stated, at Line 22, that the defendant's total income reported was $57,171.00, when in fact, as the defendant well knew, the true amount of his income was materially greater than reported—that is, $103,304.65—because the defendant had withheld information about $46,133.65 in income.  The defendant received all of that additional income through criminal activity—that is, by defrauding C.P. and by using, for his personal benefit, investment funds entrusted to him by an acquaintance. The defendant nonetheless willfully submitted the return knowing that it was materially false for the purpose of violating the tax laws. As a result, the defendant avoided paying income taxes to the Internal Revenue Service in the amount of approximately $5,516.

n)  As a result of the defendant's conduct, the defendant's total tax loss for the tax years 2015 and 2016 was $27,922.00, computed as follows:

| YEAR | UNREPORTED INCOME | TAX LOSS |
|------|-------------------|----------|
| 2015 | $122,900.00 | $22,406.00 |
| 2016 | $46,133.65 | $5,516.00 |
| TOTAL | $169,033.65 | $27,922.00 |

o) The defendant personally obtained $946,000 in unrecovered fraud proceeds in connection with the offenses of conviction and relevant conduct and avoided the payment of $27,922 in taxes as a result of the offenses of conviction and relevant conduct.

6) **Sentencing Stipulations:**

a) The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. § 3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of responsibility" for the offense(s) to which the defendant is pleading guilty and all relevant conduct, as defined in U.S.S.G. § 1B1.3; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal, state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. § 3C1.1.

b) The government will move for a 1-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. § 3E1.1(b) if the government is convinced that the defendant has accepted responsibility within the meaning of U.S.S.G. § 3E1.1(a) and further assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, and the defendant otherwise qualifies for such adjustment by having a combined offense level of 16 or more before receipt of any acceptance of responsibility adjustment under U.S.S.G. § 3E1.1(a).

7)    **Waiver of Rights to Appeal and Collateral Attack:** The defendant waives (gives up) any

and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255,

to appeal and/or to collaterally attack the following (except that the defendant does not waive the

right to raise a claim based on alleged ineffective assistance of counsel):

a) The convictions resulting from the defendant's guilty plea;

b) Any claim that the statutes to which the defendant is pleading guilty is unconstitutional;

c) Any claim that the admitted conduct does not fall within the scope of the statute;

d) Any sentence to a term of imprisonment of 46 months or less;

e) Any sentence to a fine within the maximum permitted by law;

f) Any sentence to a term of supervised release within the maximum permitted by law;

g) Any order of forfeiture or restitution imposed by the Court that is consistent with governing

law and is not contrary to the terms of this agreement.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or

agreement concerning the appropriate sentence in this case.

---

A. **Right to Counsel:** The defendant has a right to assistance of counsel in connection with

settlement of this case and understands that right.   Defense counsel has advised the defendant

of nature of the charges to which the defendant is agreeing to plead guilty and the range of

possible sentences.

B. **Waiver of Trial-Related Rights:** The defendant has the following additional constitutional

rights in connection with the charges in this case: (i) to be presumed innocent until proven

guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront,

cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence;

and (vi) to remain silent and be protected against compelled self-incrimination. The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **Court Not Bound by Plea Agreement:** This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. The Court is neither a party to, nor bound by this Plea Agreement. The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office. If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

D. **Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests:** If this agreement contains any provisions under Fed. R. Crim. P. 11(c)(1)(B) by which the government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such recommendations, requests, and stipulations between the parties. If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the defendant's plea of guilty and is not released from the obligations described in this agreement. Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with

regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

E. **Sentencing:**

    a. **Maximum terms of imprisonment:** The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement. If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other. Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively. *See* 18 U.S.C. § 3584.

    b. **Mandatory minimum terms of imprisonment:** If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment. In such cases, the court must impose a term of imprisonment no less than the required mandatory minimum term unless an exception to that requirement applies. Such exception may be dependent on a motion by the government.

    c. **Section 851 Enhancements**: The defendant understands that if the government has filed an information against the defendant as provided 21 U.S.C. § 851, alleging that the defendant has one or more final convictions for a felony drug offense, and, as part of this agreement, the defendant has admitted and/or affirmed that the defendant was so convicted, then, by pleading guilty, the defendant will lose the right to attack any sentence the court imposes by challenging any such prior conviction.

    d. **Sentencing guidelines:**

18

i. The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder. While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

ii. Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court. Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

iii. Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines. If the presentence investigation reveals that the defendant's criminal history may support an offense level different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

e. **Factual findings:** The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties. In making those findings

19

by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay.   The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

f.   **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence. In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding. For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements into evidence in any prosecution.  If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement.  To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

g.   **Government's Discretion to Recommend a Sentence:**   Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies; from recommending a specific sentence

within the applicable guidelines range as determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

h. **Sentencing-Related Information:** The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8. No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence. The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report. The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

i. **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

F. **Other Adverse Consequences:** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

b. If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship. If the defendant is a naturalized citizen, such conviction may result in denaturalization, followed by deportation or removal from the United States. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

c. A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable. It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea. The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G. **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664. In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court. The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and other costs; and any other losses suffered by the victim as a proximate result of the offense. The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

   a. The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

   b. The defendant consents to the entry of an order of forfeiture of the assets described above.

   c. The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents. The defendant

consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court. The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

d.  Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture. Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e.  In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party. The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f.  The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g.  The defendant waives the right to a jury trial on the forfeiture of assets. The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy

defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h.  The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i.  The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j.  In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property.  The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

## I.  **Determination of Financial Condition and Payment of Interest and Penalties:**

a.  In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

b.  The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

c.  The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

d.  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

## J.  **Remedies for Breach:**

a.  Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part.  In the event of such breach, the defendant will remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b.  If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

i.  To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement.  The defendant waives (gives up) any defense or objection to the

commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

ii. In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

iii. To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

iv. To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

v. To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

vi. To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K. **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant. References to "the government" in this agreement refer only to that Office. This agreement does not bind any other federal, state, or local

prosecuting authorities. Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L. **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below. No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).


ANTOINETTE T. BACON
Acting United States Attorney

Digitally signed by MICHAEL
GADARIAN
Date: 2021.01.28 13:13:03 -05'00'

Michael D. Gadarian                                    Date
Assistant United States Attorney
Bar Roll No. 517198

Michael Bartusek
Defendant

1/15/2021

Date

Lisa Peebles
Attorney for Defendant
Bar Roll No. 507041

1/15/2021

Date